## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
--------------------------------x
CAROLYN VANGEMERT, as guardian    :
for her minor son, JOHN DOE,      :
                                  :
          Plaintiff,              :
                                  :
v.                                :     CASE NO. 3:08CV00700(AWT)
                                  :
KYLE J. STRUNJO,                  :
                                  :
          Defendant.              :
--------------------------------x
```

### RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Carolyn Vangemert, brings this action against the defendant, Kyle J. Strunjo, on behalf of her minor son John Doe ("C.H."). The plaintiff sets forth in the complaint a claim pursuant to 42 U.S.C. § 1983 for false arrest, and common law claims for negligent and intentional infliction of emotional distress. The defendant has moved for summary judgment. For the reasons set forth below, the defendant's motion is being granted.

### I.  FACTUAL BACKGROUND

The defendant is a police officer employed by the Clinton Police Department. In April 2008, C.H. was a freshman attending Morgan High School ("Morgan") in Clinton and the defendant worked at Morgan as a full-time School Resource Officer.

On April 2, 2008, C.H. brought a disassembled flash camera to Morgan. It was capable of rendering a small electrical shock to a person who touched the exposed interior circuitry of the

1

camera.  C.H. avers that he may have referred to the camera as a "shocker" when others expressed an interest in touching the circuitry of the camera to feel the shock.  (C.H. Affidavit (Doc. No. 23-2) ("C.H. Aff."), ¶ 22).  Near the beginning of English class with teacher Julie Frydenborg, a student asked C.H. if he could see the camera.  Another student, J.S., told C.H. that he did not want to experience the shock from the camera.  C.H. avers that while he was holding the camera and standing behind J.S., J.S. leaned back into C.H. causing the camera to drop.  The camera fell to the ground and the flash went off.  C.H. does not know if the camera made contact with J.S.'s body or clothing before it fell.

Keri Hagness, Morgan's Assistant Principal, approached the defendant and told him that Frydenborg had alerted her that C.H. made an electronic shocking device out of a disposable camera. Frydenborg advised Hagness that C.H. was showing the device to students in class, and that one student reported that C.H. was waiving the device near him.

After questioning C.H., Hagness informed the defendant that C.H. had shocked a fellow student, J.S., but that C.H. claimed that J.S. was a willing participant in being shocked.  The defendant took a written statement from J.S., in which J.S. stated that, during English class, C.H. was showing fellow students a disposable camera and how it can shock people.  J.S.

2

stated further that he had refused to let C.H. shock him, and, thereafter, C.H. tried to stick the camera on J.S.'s neck and shock him against his will.  J.S. reported that he had to defend himself to avoid being shocked by C.H.  C.H. was arrested without a warrant and charged with, <u>inter</u> <u>alia</u>, breach of peace.

On April 4, 2008, D.D. told C.H. that he had seen C.H. on the English and Mexican news stations.  C.H. avers that he responded that he could not believe "what a big deal the newspapers, school and police had made about the events. . . . [T]hey were treating it like it was Columbine."  (Id., ¶ 34) R.C., a student at Morgan, went to the defendant's office and stated that C.H. had commented that "Morgan will be the next Columbine."  (Kyle J. Strunjo Affidavit (Doc. No. 19-2)("Strunjo Aff.") ¶ 28).  The defendant took a written statement from R.C., in which R.C. reported that other students, I.G. and D.D., also heard the statement.  The defendant spoke with I.G., who reported in a written statement that she saw C.H. talking to D.D. and heard C.H. say that "Morgan will be the next Columbine." (Id., ¶ 31)  I.G. stated that she did not know what Columbine was and was told by M.P. that it was "when kids went on a school shooting." (Id., ¶ 31)

The defendant spoke with D.D., who gave a written statement in which he said that he did not remember having a conversation with C.H.  The defendant also spoke with M.P. who said in a

3

written statement that, while she was standing outside a classroom, C.H. walked by her while talking to his friends and she heard him say that "Morgan is going to be the next Columbine." (Id., ¶ 33)  In addition, the defendant spoke with S.L., who reported in a written statement that she was standing with M.P. when C.H., who was on "Heelie" shoes, wheeled around her and M.P. and said that "Morgan is going to be the next Columbine." (Id., ¶ 34) S.L. stated further that she asked M.P. what Columbine was and that M.P. informed her that it was the name of a school where two kids went crazy and shot everyone.

Finally, the defendant spoke with M.H. who came to his office and said in a written statement that, at the beginning of third period, he heard C.H. say that "this is going to be the next Columbine, its going down and the chemicals are in line." (Id., ¶ 35)  The defendant arrested C.H. without a warrant and charged him with breach of peace.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of

summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return

5

a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248
(internal quotation marks omitted).  A material fact is one that
would "affect the outcome of the suit under the governing law."
<u>Id.</u>  As the Court observed in <u>Anderson</u>: "[T]he materiality
determination rests on the substantive law, [and] it is the
substantive law's identification of which facts are critical and
which facts are irrelevant that governs."  <u>Id.</u>  Thus, only those
facts that <u>must</u> be decided in order to resolve a claim or defense
will prevent summary judgment from being granted.  When
confronted with an asserted factual dispute, the court must
examine the elements of the claims and defenses at issue on the
motion to determine whether a resolution of that dispute could
affect the disposition of any of those claims or defenses.
Immaterial or minor facts will not prevent summary judgment.  <u>See</u>
<u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary
judgment, the court must "assess the record in the light most
favorable to the non-movant and . . . draw all reasonable
inferences in its favor." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d
33, 41 (2d Cir. 2000) (quoting <u>Delaware & Hudson Ry. Co. v.</u>
<u>Consol. Rail Corp.</u>, 902 F.2d 174, 177 (2d Cir. 1990)).  Because
credibility is not an issue on summary judgment, the nonmovant's
evidence must be accepted as true for purposes of the motion.
Nonetheless, the inferences drawn in favor of the nonmovant must

6

be supported by the evidence.  "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment."  Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]."  Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  See Celotex Corp., 477 U.S. at 324.  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial."  Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact."  Weinstock, 224 F.3d at 41.  If the

7

nonmovant fails to meet this burden, summary judgment should be granted.

### III. DISCUSSION

In Swain v. Doe, No. 3:04cv1020(SRU), 2009 WL 3151183 (D. Conn. Sept. 24, 2009), the court explained the requirement that there have been a termination favorable to the plaintiff before that plaintiff can prevail on a § 1983 claim for false arrest:

> Claims for false arrest or malicious prosecution, brought under [§] 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law. Under [§] 1983, the elements of claims for false arrest and malicious prosecution are controlled by state law. Under both Connecticut law and [§] 1983, a plaintiff must allege that the prosecution terminated in his or her favor to state a claim of malicious prosecution or false arrest. See Roesch v. Otarola, 980 F.2d 850, 853-54 (2d Cir. 1992) (holding that under Connecticut law, a false arrest plaintiff must show that the charges terminated favorably); Frey v. Maloney, 476 F. Supp. 2d 141, 147 (D. Conn. 2007) ("[t]o prevail on a claim of malicious prosecution, a plaintiff must prove that ... 'the criminal proceedings have terminated'" in his or her favor) (citations omitted).

Id., at *4 (quotation marks omitted; citations omitted).  In addition, to prevail on a false arrest claim, "the plaintiff [has] the burden of proving that the arresting officer did not have probable cause to arrest [him]." Beinhorn v. Saraceno, 23 Conn. App. 487, 491 (1990).  Although the charges against C.H. terminated in his favor, the plaintiff can not prevail on the false arrest claim because the defendant had probable cause to arrest C.H. on both occassions.

8

### A. Favorable Termination

"The Second Circuit has held that to state a claim of false arrest under Connecticut law - and, therefore, to state a § 1983 claim for false arrest - a plaintiff must prove that the prosecution on the arrest terminated in the plaintiff's favor." Frey v. Maloney, 476 F. Supp. 2d 141, 147 (D. Conn. 2007). "A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his [§] 1983 claim." Id. (citing Roesch v. Otarola, 980 F.2d 850, 853 (2d Cir. 1992). A plaintiff "may satisfy the favorable termination element by showing that the charges against [him] were discharged without a trial under circumstances amounting to the abandonment of the prosecution without request by him or arrangement with him." Id., at 148 (internal quotation marks omitted).

On September 29, 2009, the parties appeared in Connecticut Superior Court. The prosecutor stated that he intended "to nolle the open counts subject to certain conditions." (Hr'g Tr. 1:22-24, Sept. 29, 2009). He told the court that the State had made an offer to C.H. to nolle the case if C.H. complied with certain bench orders and obtained a letter from a counselor. The prosecutor then stated that C.H. had performed his end of the agreement, and the State would nolle the open counts. In

9

response, C.H.'s attorney requested a dismissal, which the court denied after C.H. refused to admit that there had been probable cause for the arrests.  C.H.'s attorney then made a request for a trial, which the court granted.  At that point, the prosecutor responded that he did not have to go to trial and the court indicated that the State could enter a nolle.  Then, a nolle was entered.

Notwithstanding the fact that C.H. performed his end of the agreement and was entitled to a nolle for that reason, he had the right to request a dismissal instead prior to the time the nolle was entered.  When C.H. insisted, while denying the existence of probable cause, on going to trial, the prosecutor simply entered a nolle on both breach of peace charges in lieu of going to trial.  Thus, the charges against C.H. were discharged without a trial under circumstances amounting to an abandonment of the prosecution without request by C.H.  Compare St. Paul v. Griffin, No. 4001817, 2006 WL 2773418 (Conn. Super. Sept. 12, 2006) (noting plaintiff's failure to move for dismissal or a trial to object to entry of nolle, pursuant to Prac. Book. § 39-30); Frey, 476 F. Supp. 2d at 148-49 (noting that although plaintiff moved to dismiss case or entry of nolle, plaintiff conceded that he ultimately affirmatively agreed to entry of nolle).

Accordingly, the plaintiff has established that the criminal proceedings with respect to the breach of peace charges against

C.H. terminated in his favor.

**B. Probable Cause**

The defendant contends that the plaintiff is barred by collateral estoppel from litigating the issue of probable cause because the Superior Court found that probable cause existed. However, "[a] party is collaterally estopped from raising an issue in a proceeding if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks omitted). Here, the defendant can not prevail on the basis of collateral estoppel because the record does not show that C.H. had a full and fair opportunity to litigate the issue of probable cause.

In Blalock v. Bender, No. 3:04cv1519(PCD), 2006 WL 1582217 (D. Conn. June 1, 2006), the court set out the objective standard for determining whether probable cause exists:

> The arresting officer has probable cause to arrest when (1) police have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed, (2) by the person to be arrested. In determining whether probable cause exists pursuant to this objective standard, district courts must look to the totality of the circumstances, examining those facts available to the arresting officer at the time of the arrest and immediately before it. [P]robable cause

11

can exist even where it is based on mistaken
information, so long as the arresting officer acted
reasonably and in good faith in relying on that
information.  Moreover, an officer need not eliminate
every plausible claim of innocence before making an
arrest.

Id., at *5(quotation marks omitted; citations omitted).

[O]nly the probability, and not a prima facie showing,
of criminal activity is the standard [for] probable
cause.

The fact that an innocent explanation may be consistent
with the facts alleged . . . does not negate probable
cause.  Moreover, an officer's failure to investigate
an arrestee's protestations of innocence generally does
not vitiate probable cause.  Nor does it matter that an
investigation might have cast doubt upon the basis for
the arrest.  Probable cause does not require that an
arresting officer believe with certainty that the
arrestee will be successfully prosecuted.

Couronyer v. Coleman, No. 3:01cv221(AWT), 2006 WL 2790403, *14

(D. Conn. Sept. 27, 2006) (quotation marks omitted; citations

omitted).

C.H. was arrested on two separate occasions.  With respect

to the April 2, 2008 arrest, the defendant has produced evidence

that he relied on information conveyed to him by Assistant

Principal Hagness and a written statement from the victim.  The

information received by the defendant was reasonably trustworthy.

Nothing about the circumstances raised any question as to its

reliability.  Based on what the defendant had been told, he could

reasonably believe that on April 2, 2008, C.H. had committed the

offense of breach of peace, which offense is described as

follows:

> (a) A person is guilty of breach of the peace in the
> second degree when, with intent to cause inconvenience,
> annoyance or alarm, or recklessly creating a risk
> thereof, such person: (1) Engages in fighting or in
> violent, tumultuous or threatening behavior in a public
> place; or (2) assaults or strikes another; or (3)
> threatens to commit any crime against another person or
> such other person's property; or (4) publicly exhibits,
> distributes, posts up or advertises any offensive,
> indecent or abusive matter concerning any person; or
> (5) in a public place, uses abusive or obscene language
> or makes an obscene gesture; or (6) creates a public
> and hazardous or physically offensive condition by any
> act which such person is not licensed or privileged to
> do. For purposes of this section, "public place" means
> any area that is used or held out for use by the public
> whether owned or operated by public or private
> interests.

Conn. Gen. Stat. § 53a-181.

With respect to the April 4, 2008 arrest, the defendant has produced evidence that he obtained written statements from six students, five of which he relied upon. Again, the information received by the defendant was reasonably trustworthy. Each of the five students gave a version of events that corroborated the version given by the others. D.D. did not corroborate them, but he did not contradict them either. He simply stated that he did not remember having a conversation with C.H. Based on what the defendant had been told, he could reasonably believe that C.H. had committed the offense of breach of peace on April 4, 2008.

The plaintiff makes two arguments in support of her contention that the defendant did not have probable cause. First, the plaintiff argues that C.H. lacked the requisite intent on both occasions. Second, the plaintiff argues that the

13

defendant relied on rumors and failed to question C.H.

The plaintiff's argument with respect to C.H's intent is misplaced.  That point goes to whether there is evidence to prove that C.H. is guilty of each of the offenses.  At issue here is whether the defendant had probable cause to arrest C.H. for each of the offenses.

The argument that the defendant relied on rumors and failed to question C.H. is also unavailing.  As to the April 2, 2008 arrest, it is true that the Assistant Principal was not an eyewitness, but after talking to her, the defendant interviewed the victim.  As to the April 4, 2008 arrest, the defendant talked to five eyewitnesses who indicated they heard C.H. make the statement.  Rumor is "talk or opinion widely disseminated with no discernible source" or "a statement or report current without known authority for its truth."  Webster's New Collegiate Dictionary (1981).  Thus, the defendant did not act based on rumor.  As to the failure to question C.H., on April 2, 2008 Hagness had questioned C.H. and conveyed C.H.'s version of events to the defendant.  In any event, on both occasions, the defendant had probable cause to arrest C.H. before he interacted with C.H. Had the defendant questioned C.H. before arresting him, C.H. presumably would have denied that he engaged in the conduct reported by the eyewitnesses.  At that point, the defendant would have had no duty to investigate any protestations of innocence by

C.H.

The plaintiff does not produce any evidence, or even assert, that the defendant was aware that information on which he based either decision to arrest C.H. was false. As a matter of law, the defendant was not required to investigate to determine whether C.H. claimed innocence, nor was the defendant required to know with certainty that C.H. was guilty of the crime charged.

Consequently, with respect to both arrests, the plaintiff has failed to create any genuine issue of material fact as to whether the defendant had probable cause to arrest C.H. Accordingly, the defendant is entitled to summary judgment on the § 1983 false arrest claim.

**C. Emotional Distress**

Having granted summary judgment on the plaintiff's sole federal claim, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims for negligent and intentional infliction of emotional distress pursuant to 28 U.S.C. § 1367(c). See Valencia ex rel. Franco v. Lee, 316 F. 3d 299, 305 (2d Cir. 2003)("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.")(quoting Carnegie-Mellon Univ. v.

15

Cohill, 484 U.S. 343, 350 n.7 (1988)).

**IV.  CONCLUSION**

For the reasons set forth above, the defendant's Motion for Summary Judgment (Doc. No. 19) is hereby GRANTED.  The Clerk shall enter judgment in favor of the defendant and close this case.

It is so ordered.

Signed this 29th day of March, 2010 at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge
